**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| NEW IMAGE GLOBAL INC., | |
| Plaintiff, | Court No. 14-00271 |
| v. | |
| | **COMPLAINT** |
| UNITED STATES, | |
| Defendant. | |

Plaintiff New Image Global, Inc. ("New Image"), by its attorneys, Stein Shostak Shostak Pollack & O'Hara, LLP, complains of Defendant, United States, and alleges as set forth in this complaint:

## Jurisdiction

1.  Jurisdiction in this action arises under 28 U.S.C. §1581(a). New Image is the importer and real party in interest and has standing to bring this action pursuant to 28 U.S.C. § 2631(a). On April 23, 2014, U.S. Customs and Border Protection ("Customs") denied New Image's Protest No. 2506-13-100110. Prior to commencing this action, New Image paid all liquidated duties, taxes, charges, or exactions owed on the subject merchandise and timely filed this action under 28 U.S.C. § 2636(a)(1).

2.  This case involves Customs' assessment of internal revenue excise taxes on New Image's tobacco cigar wraps (referred to as wraps).

Court No. 14-00271

## Parties

3.  New Image is a corporation organized and existing under the laws of the State of California, with its principal place of business formerly in Corona, and currently in Tustin, California.

4.  Customs and Border Protection is an agency of the United States responsible for the assessment of duties and collection of taxes on tobacco products imported into the United States.

## Procedural History

5.  Between 2014 through 2016, New Image filed five actions in this Court challenging Customs' assessment of additional excise taxes.

6.  On August 6, 2018, Plaintiff filed a consent motion to consolidate Court Nos. 15-00175 and 15-00226 and designate the consolidated action as a test case. Plaintiff stated that while there are factual differences among its various products, the test case would serve to narrow the issues.  The Court granted the motion on August 7, 2018, and designated Court No. 15-00175 as a test case.

7.  On August 27, 2018, Plaintiff filed consent motions to suspend Court Nos. 14-00271, 15- 00316, and 16-00016 under Test Case No. 15-00175. These cases cover approximately thirty-five entries. On August 31, 2018, the Court granted the consent motions and suspended the three cases under Test Case No. 15-00175.

8.  In December 2018, the parties filed cross-motions for summary judgment in the test case.

9.  On July 23, 2019, this Court granted the Government's motion for summary judgment and denied New Image's motion in the test case.  The Court sustained U.S.

Court No. 14-00271

Customs and Border Protection's (CBP) assessment of excise tax on New Image's wraps based on its finding that Customs' weighing using an indirect method was in accordance with law. *New Image Global, Inc. v. United States*, Slip Op. 19-90 (July 23, 2019).

10.   New Image appealed this Court's decision, which the U.S. Court of Appeals for the Federal Circuit affirmed.  On June 28, 2022, the Federal Circuit issued the mandate.

11.   In accordance with USCIT Rule 83(I)(3) and/or USCIT Rule 85(c), Plaintiff is filing this complaint to remove this matter from the suspension calendar because there are remaining issues in this case, separate and distinct from CBP's methodology, that were not resolved through the test case and affect the accuracy of Customs' weights and rate advances.  The test case did not resolve issues concerning the validity and reliability of Customs' samples (and sample sizes) as well as the applicability of Customs' lab reports to different wrap product styles, *i.e.*, different flavors that Customs' lab did not weigh.

## Relevant Law

12.   "In a test case, 'the suspended actions maintain their separate identities' such that the disposition of the test case 'is not necessarily legally binding on the suspended actions.'" *Danze, Inc., v. U.S.*, Slip Op. 20-112 (CIT, August 7, 2020). *Res judicata* does not apply here.

/ / /

/ / /

/ / /

3

Court No. 14-00271

## Factual Background

## New Image's Entries and Weights

13. With respect to the fifteen entries in this case, beginning on January 17, 2012, and up through February 7, 2014, New Image filed the entries for wraps at the Port of San Diego. New Image's wraps are comprised of homogenized tobacco, binder, alcohol and glycol-based flavorings and water. As a natural product, the weights of wraps can vary by batch, by product, by flavor, and by time of year and production. Typically, each entry may include up to four products (EZ Roll, Double Up, XXL and Kush (non-XXL)) consisting of different flavors and hundreds of thousands of individual sealed packages; wraps with different flavors have different ingredients. Each package is comprised of a different flavor and one or two wraps per package.

14. New Image provided the weights for the subject merchandise that it used to calculate the estimated internal revenue excise tax on tobacco on its entry papers. Plaintiff declared a net weight for the wraps (*i.e.*, exclusive of the individual packing materials and plastic straws/tubes inside each package) consistent with New Image's ascertainment of the weight of the wraps. This declared weight of 0.75 grams is stated on each package.

15. New Image's production facility in Mexico produces thousands of wraps each workday. As part of its quality control, approximately 40 wraps are selected and weighed randomly from each of the three production machines at least three times daily. Generally, New Image weighs its products as they come off the production line.

16. New Image Mexico utilizes an Ohaus Adventurer model scale to weigh the wraps. The scale is protected in an acrylic box to help maintain control over room

4

Court No. 14-00271

conditions such as temperature and humidity. The factory records approximately 360 weight calculations daily, and detailed production/quality control records are maintained in the ordinary course of its business which reflect an average weight of .845 to .865 grams per unit. According to its quality control manager, this is the optimum weight because the product, through evaporation, loses 10% or more of its weight, *i.e.,* a net weight of .75 grams.

17. When the wraps are sealed at the factory, it is physically impossible for the wraps to increase in weight.

**CUSTOMS ACTIONS**

18. Customs conducted in its own weight determinations at the Customs and Border Protection Los Angeles laboratory in Long Beach, California, on December 2, 2011, and during April 2012. Based on its April 2012 reports, Customs issued a Notice of Action on December 18, 2012, rate advancing forty-two of New Image's entries, including the entries in this case, because Customs' weights were higher than New Image's declared weights. The Notice of Action provides Customs' calculated weights for four New Image tobacco wrap products. Customs' calculated weights range between .87 grams to .92 grams for the EZ rolls, XXL or Kush (non-XXL) products. For the Double Ups, Customs calculated the weight to be .69625 grams.

19. The lab reports from April 2012 that Customs produced in earlier consolidated case nos. USCIT 15-175 and 15-226 provide weight calculations using tobacco wraps taken solely from entry BIM-11206922. Entry BIM-11206922 is summonsed this action. According to Defendant, Customs did not weigh wraps imported under any other entries in this case (or any other case). In its Answer in Court No. 15-226, its discovery

Court No. 14-00271

responses, and its motion for summary judgment, Defendant stated unequivocally that Customs used weights from samples taken from Entry No. BIM-11206922 in assessing the excise taxes for the forty-two entries identified in the Notice of Action.

20. New Image's export invoice and packing list show that it imported 1,730,000 individual wraps under Entry No. BIM-11206922. The April 2012 lab reports using samples from this entry state that the average weight of the four tobacco wrap products, when adjusted per wrap, range between .87 grams to .92 grams for the EZ rolls, XXL or Kush (non-XXL) products. For the Double Ups, Customs calculates the weight to be .69625 grams.

21. The reports show that the lab performed twenty-five separate weighings. Several weight calculations are based on a "wet" weight. The balance are weights based on the difference method *i.e.*, the weight of the closed packages and the "net weight" after the tobacco was removed from the packages *i.e.*, without the tobacco.

## SAMPLE SIZE

22. The twenty-five lab reports produced by Defendant for the weighing of wraps from BIM-11206922 reflect that the sample sizes taken from this entry were either 7 or 14 wraps for each flavor weighed. According to the lab reports, Customs weighed eleven different flavors of the EZ Roll product, four different flavors of Double Up product, nine different flavors of the XXL product, and one Kush product.

23. The lab represented that it weighed a total of 154 EZ Rolls, 56 Double Ups, 126 XXLs, and 14 Kush products.  In total, Customs weighed 350 wraps out of 1,730,000 wraps imported under this entry.  The Customs import specialists then

6

Court No. 14-00271

extrapolated the weight results and applied them to all the wraps imported on this entry and to the millions of other wraps imported on the other 14 entries in this case.

24. When relying on statistics to achieve a result, one should be 95% confident in the results of the calculation. Standard techniques that are published and peer reviewed have existed for almost a century. Using these techniques, sample sizes can be computed which can be accepted with 95% confidence. With respect to the lab reports for Entry No. BIM-11206922, if a specific product in a shipment consists of 100,000 units, then the sample size should be between 358 units to 383 units to reach a 95% confidence; when the product is 405,000 units the sample size increases slightly to obtain a 95% confidence.

25. Customs sample sizes of 7 and 14 are not based on any foundation or technique that is published and peer reviewed regarding sample size calculations that yield 95% confidence or any level of confidence. Because Customs failed to weigh a sample size sufficient to reach a 95% confidence, its results are statistically insignificant and cannot be extended to millions of other wraps with confidence. The results achieved by the Customs lab are not scientifically valid and are unreliable.

**CUSTOMS LAB REPORTS ARE MISREPRESENTATIVE AND UNRELIABLE**

26. Previously, Defendant has represented to this Court that it weighed samples only from Entry No. BIM-11206922 in 2012. These weights form the basis of Customs' rate advance. The 2012 lab reports reflect that Customs weighed eleven different flavors of EZ Rolls, four different flavors of Double Ups, nine different flavors of XXLs, and one Kush product. The export invoice and packing list associated with BIM-11206922 reflect that New Image imported only four flavors of EZ Rolls, four flavors of

Court No. 14-00271

Double Ups, and a Krush/Kush product.  The entry package filed with the court shows
there are no XXL products listed on the invoice or packing list for this entry. As a result,
Customs 2012 lab reports are unreliable and misrepresentative because they include
wraps (*i.e.*, XXL products and flavors of other products such sour apple, cherry vanilla,
and others) which were not imported on Entry No. BIM-11206922.  The source of some,
if not all, of these samples is unknown.  Defendant produced no other document to
show another source of the samples.

27. Customs rate advances are unlawful because they are based on unreliable
lab results which misrepresent the provenance of many of the products or the chain of
custody of the products that were given to the lab.

## Count 1 (Weights are not Accurate)

28. Paragraphs 5 through 27 are repeated with the same force and effect as if
fully stated herein.

29. Customs' 2012 weight determinations are not accurate because the sample
sizes of the products are statistically insignificant in relation to the quantity imported on
Entry BIM-11206992.  The assessment of excise taxes derived from Customs'
calculated weights is unlawful and should be rejected.

## Count 2 (Weights are not Reliable or Valid)

30. Paragraphs 5 through 27 are repeated with the same force and effect as if
fully stated herein.

31. Customs' 2012 weight determinations are not reliable or valid under Daubert
because the sample sizes of the product are statistically insignificant in relation to the

Court No. 14-00271

quantity imported on Entry BIM-11206992. The assessment of excise taxes derived from Customs' calculated weights is unlawful and should be rejected.

## Count 3 (Weights are not Accurate)

32. Paragraphs 5 through 27 are repeated with the same force and effect as if fully stated herein.

33. Customs weight determination did not include any wraps imported on the entries included in this case, other than BIM-11206922. The indirect weight determination taken from a statistically insignificant sample size from one entry cannot be used to determine the weights for any of the multi-million wraps imported in the 15 entries included in this matter.  The assessment of excise taxes derived from Customs' calculated weights is unlawful and should be rejected.

## Count 4 (Weights are Factually Impossible)

34. Paragraphs 5 through 27 are repeated with the same force and effect as if fully stated herein.

35. Customs 2012 weights are factually impossible. According to the factory's detailed weight records, the average weight of the XXL and EZ Roll products are .86 grams. Customs 2012 weight determination for these products are .91 and .92 grams. Once the wrap is sealed at the factory, it is impossible for the product to increase in weight. For this reason, Customs weight determination is unreliable. The assessment of excise taxes derived from Customs' calculated weights is unlawful and should be rejected.

## Count 5 (Factory Weights Less Evaporation are Reliable)

9

Court No. 14-00271

36. Paragraphs 5 through 27 are repeated with the same force and effect as if fully stated herein.

37. New Image's factory personnel performed actual weighing on an average of 360 products daily with an Ohaus Adventurer scale. The factory maintains comprehensive records to derive an average weight of .86 grams per wrap, which reduced by estimated evaporation of 10% results in a weight of .75 grams per wrap. Plaintiff's sample size and methodology is statistically significant and reliable and should be the weight used for calculating excise taxes.

## Count 6 (Lab Reports are Misrepresentative)

38. Paragraphs 5 through 27 are repeated with the same force and effect as if fully stated herein.

39. Customs laboratory reports attributed to Entry No. BIM-11206992 claim to include wraps (both products and flavors) which were not imported on this entry.  The source of these samples is unknown. These reports are material misrepresentations, false, and unreliable. They should be disregarded.  Customs rate advances based on these lab reports are unlawful.

## Count 7 (Lab Reports Should be Disregarded)

40. Paragraphs 5 through 27 are repeated with the same force and effect as if fully stated herein.

41. Defendant represented that Customs took samples only from Entry No. BIM-11206992.  Because the veracity of Customs lab reports is in question, all the reports should be disregarded and New Image's declared weights or the factory weights should be used to calculate the excise taxes.

10

Court No. 14-00271

## Prayer for Relief

Plaintiff requests that the court enter judgment in favor of New Image and provide the following relief:

(1) Order Customs to reliquidate the subject entries based on Plaintiff's declared weights; or

(2) Alternatively, the Court should order Customs to reliquidate the subject entries based on the weights calculated at the factory; and

(3) Order Customs to refund the excess taxes paid by Plaintiff, together with interest as provided by law; and

(4) Order any other relief that the court deems appropriate.


Dated: October 28, 2022              Respectfully submitted,

                                     STEIN SHOSTAK SHOSTAK POLLACK & O'HARA
                                     Attorneys for Plaintiff
                                     865 S. Figueroa St., Suite 1388
                                     Los Angeles, CA 90017
                                     Tel: (213) 630-8888


                             By:     _____/s/ Elon A. Pollack_____
                                     Elon A. Pollack, Esq.

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California.   I am over the age of 18 and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 1388, Los Angeles, California 90017.

On October 28, 2022, I served a copy of the foregoing documents described as **COMPLAINT** on the interested parties (named below) in this action as follows:

Justin R. Miller, Esq.
Hardeep K. Josan, Esq.
U.S. Department of Justice, Civil Division
International Trade Field Office
26 Federal Plaza, Suite 346
New York, NY 10278-0140

     **[VIA E-MAIL]** By sending the documents Via e-mail to the following e-mail address:     justin.r.miller@usdoj.gov_   Hardeep.k.josan@usdoj.gov

I declare that I am employed by a member of the bar of this court, at whose direction this service was made.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on October 28, 2022, in Los Angeles, California.

/s/ Antonia Olmedo
ANTONIA OLMEDO